HUTCHENS, ADMINISTRATOR *v.* HUTCHENS

[No. 17,977. Filed March 22, 1950.]

Martin, P. J., dissents.

*Joseph M. McDaniel* and *Charles P. Tighe,* both of New Albany, for appellant.

*Robert R. Kelso, Frank E. Lorch, Jr.* and *Chester V. Lorch,* all of New Albany, for appellee.

CRUMPACKER, J.—This is a suit in equity involving two deeds through which the appellee holds title to certain residence property in New Albany, Indiana. It seeks a cancellation of the first of said deeds and an adjudication to the effect that the appellee holds title through the second as a trustee for the use and benefit of the appellant. Both deeds are to the same property and the complaint charges that both were procured without adequate consideration through a fraudulent scheme and undue influence practiced by one William Hutchens, the deceased husband of the appellee, upon his mother, Alice N. Hutchens, the then owner of the property involved. The court found specially that no fraud or undue influence was involved in the transaction, that "the evidence discloses no failure of consideration" and concluded "that the law is with the defendant and that the plaintiff take nothing by his amended complaint herein."

As grounds for reversal the appellant contends that (1) the decision of the court is not sustained by sufficient evidence; (2) said decision is contrary to law; (3) the court's special findings of fact that the deeds involved were not procured through fraud or undue influence and there was no failure of consideration in connection therewith are not supported by the evidence; and (4) the court's conclusions of law on the facts found are erroneous.

A consideration of the evidence favorable to the court's decision warrants the following statement of fact: On April 18, 1938, Alice N. Hutchens, aged 88, owned real estate in the city of New Albany, Indiana, commonly known as 1114 Clark Street. This property was improved by a small cottage in the two front rooms of which the said Alice N. Hutchens made her home. Her daughter Julia Baumgartle and said daughter's husband, who was then and had been for several years

afflicted with tuberculosis of the lungs, occupied the remainder of said residence but paid no rent therefor. The house was stove heated, had no inside toilet facilities and was worth approximately $1,300 subject to a mortgage in the sum of $350 and unpaid taxes amounting to $99. Alice N. Hutchens had no other property of any kind or character and no income except the voluntary contributions of her children aggregating a few dollars per week supplemented occasionally by gifts of food, clothing and the bare necessities of life. She had six adult children: William Hutchens, Eugene Hutchens, Harry Hutchens, Julia Baumgartle, Ella Oberdorfer and Anna Wilkins. Of these William, the oldest, seems to have managed what few business transactions his mother had prior to April 18, 1938, and which, although mentally sound, she was unable to tend to personally by reason of her advanced years and physical infirmities. Sometime prior to April 18, 1938, William Hutchens discussed with his brothers the necessity of paying their mother's taxes but they were either unable or unwilling to contribute thereto and he informed them that, under the circumstances, he intended to bid the property in at tax sale and take the certificate therefor in his own name. He also discussed the matter with his mother and told her of his intention in respect thereto and she accepted the proposal without protest. On said April 18, 1938, the property was offered for sale to pay delinquent taxes and was bid in by William Hutchens for $99 and the usual tax sale certificate was issued to him. In the following May he started collecting rent at the rate of $6 per month from the Baumgartles, who still occupied a part of the house, but whether he kept such rents for his own use or used them to care for his mother does not appear. She, however, continued to reside in the two rooms she formerly occupied under the same circumstances as there-

tofore. On April 11, 1940, Alice N. Hutchens, then 90 years old but of sound mind, deeded the property to William Hutchens and his wife Mattie, as tenants by entireties, and contemporaneously therewith William and Mattie executed a written agreement whereby Alice N. Hutchens was to have the use of the rooms she then occupied for the remainder of her life or "until she sees fit to give them up." Both of these instruments were subsequently recorded in the recorder's office of Floyd County. On January 16, 1941, the property remaining unredeemed from the tax sale of April 18, 1938, the auditor of said county issued a deed thereof to William Hutchens and in the following September he paid and discharged the mortgage heretofore mentioned in the sum of $350. In the meantime William suggested to his mother that she would be more comfortable living in his home where there were inside toilet facilities and furnace heat and other modern conveniences. She finally concluded that this was true and in June, 1942, she voluntarily left her quarters at 1114 Clark Street and, of her free will, moved into William's home where she enjoyed the privileges of all that part of the house occupied by him and his family. William Hutchens died testate May 13, 1943, leaving all of his property to his wife Mattie, the appellee herein. His mother, being entirely welcome, remained with the appellee until March 17, 1944, when she decided to go to her daughter Julia "to help Julia pay her rent" as she expressed it. In October, 1944, she went to live with her son Eugene but returned to Julia in April, 1945, and on May 17, 1945, she commenced this suit, the purpose of which we have above indicated. While the same was pending below she died on October 12, 1945, at the age of 95 years. Her son Eugene was appointed administrator of her estate and as such he was substituted as party plaintiff herein. His interest, as the

administrator of his mother's estate, is alleged to be the necessity of reaching the property involved to make assets to pay her debts and the costs of administration. From the deposition of Alice Hutchens, taken in anticipation of her possible death before trial, it appears that she knew that her son William had "bought the property in for taxes for he told me he had bought it." She made no protest in respect to this nor did she make any effort to redeem the property because she had no money but "I expected Will to leave the property to me in his will because I didn't think he would give Mattie my home." She testified, however, that William had never made her any promise to that effect. She denied any recollection of having executed the deed of April 11, 1940.

In respect to the appellant's assignment of error it is clear that No. 4, charging that the court's conclusions of law are erroneous, is without merit. The gist of the complaint is fraud, undue influence and want of consideration. The court found the ultimate facts in respect thereto against the appellant and in considering alleged error in the conclusions of law we must accept such facts as correctly found. *Edmundson* v. *Friedell* (1928), 199 Ind. 582, 159 N. E. 428; *Standard Live Stock Ins. Co.* v. *Atkinson* (1916), 185 Ind. 34, 111 N. E. 913; *Miller* v. *Muir* (1945), 115 Ind. App. 335, 56 N. E. 2d 496. The decision of the court being negative, assignment No. 1, to the effect that such decisions is not sustained by sufficient evidence, presents no question. *Warren Company Inc.* v. *Exodus* (1944), 114 Ind. App. 563, 53 N. E. 2d 546; *Smith, Executrix* v. *Strock, Executor* (1945), 115 Ind. App. 518, 60 N. E. 2d 157; *Heffington* v. *Tichener* (1946), 116 Ind. App. 475, 65 N. E. 2d 500; *Arlington* v. *Brown* (1947), 117 Ind. App. 535, 73 N. E. 2d 774. The same may be said of assignment No. 3,

which challenges the sufficiency of the evidence to support certain of the court's special findings of fact. These findings are negative and against the appellant who had the burden of proof in respect thereto. This leaves but one question for consideration: Is the decision of the court contrary to law?

Actual fraud has been defined by our courts to consist of deception intentionally practiced to induce another to part with property or surrender some legal right and accomplishing the end designed. *Daly* v. *Showers* (1937), 104 Ind. App. 480, 8 N. E. 2d 139. Its essential elements are false representations, scienter, deception and injury. *Edwards* v. *Hudson* (1938), 214 Ind. 120, 14 N. E. 2d 705; *Baker* v. *Meenach* (1949), 119 Ind. App. 154, 84 N. E. 2d 719. The record before us is devoid of evidence tending to prove actual fraud. Under what circumstances William Hutchens procured the deed of April 11, 1940, is undisclosed. Five years later his mother, then almost 95 years old, had no recollection of having executed it but the evidence is convincing that she did. William Hutchens was dead when this case was tried and his deposition was not taken before his death. His wife Mattie, by reason of ill health, was unable to testify and whether or not she was present when the deed was executed does not appear. Thus the actual transaction remains a matter of speculation and surmise. In respect to the tax deed we find no misrepresentations or deceit. William Hutchens' intentions and actions in connection therewith were openly declared by him and fully understood by his mother, brothers and sisters. In procuring the tax deed and retaining the title thereby conveyed he did nothing but what he had a right to do under the law nor did he fail to do anything which, by law, he was bound to do. Actual fraud cannot be predicated upon such a set of facts. *Reiter* v.

*Cumback* (1891), 1 Ind. App. 41, 27 N. E. 443; *Sachs* v. *Blewett* (1934), 206 Ind. 151, 185 N. E. 856, 188 N. E. 674.

The appellant contends, however, that the rule applicable to actual fraud does not apply where a breach of duty arises from a confidential or fiduciary relationship and whereby the party at fault, without fraudulent intent, gains an advantage at the expense of one to whom he owes such duty. That the facts disclosed by the undisputed evidence in this case show a course of conduct on the part of William Hutchens which, if sanctioned by law, will result to his unconscionable advantage, irrespective of evidence of actual intent to defraud his mother, and therefore constructive fraud arises as a matter of law. *Ballard* v. *Drake's Estate* (1937), 103 Ind. App. 143, 5 N. E. 2d 671; *Dale* v. *Drake's Estate* (1937), 103 Ind. App. 142, 5 N. E. 2d 676. Apparently the trial court saw nothing unconscionable in the transaction nor do we. It is true that William Hutchens acquired title to his mother's property but had he not done so she would have lost it through sale for delinquent taxes, probably to a stranger as no other member of the family seemed able and willing to pay them, and there is nothing in the evidence to indicate that it could have been redeemed without William's help, which he would have been under no legal obligation to give. It resulted in her removal, with her consent freely given, to a more suitable and comfortable home which she occupied as long as she cared to. The property was producing no income and her meager needs were met until she died with the same degree of adequacy as before she lost it. We cannot say that constructive fraud appears as a matter of law.

It is next contended that the undisputed evidence discloses a confidential relationship between William

Hutchens and his mother in which he was the dominant party. That by reason of such relationship he gained a substantial advantage or benefit through her deed to him, which raises a presumption of undue influence in its execution and casts upon him the burden of proving that the transaction was in good faith, just and equitable and that there is no evidence whatever to sustain such burden. We concede the validity of the rule that where a confidential relation is shown to exist between the parties to a deed and where the grantee, who is the beneficiary, is the dominant spirit in the transaction, the law raises a presumption of undue influence. *McCord* v. *Bright* (1909), 44 Ind. App. 275, 87 N. E. 654, *Huffman* v. *Huffman* (1905), 35 Ind. App. 643, 73 N. E. 1096; *Hancock* v. *Hancock* (1916), 63 Ind. App. 173, 111 N. E. 336; *Sherrin* v. *Flinn* (1900), 155 Ind. 422, 58 N. E. 549. Whether or not a confidential relationship existed between William Hutchens and his mother in which he was the superior or dominant party was a question of fact for the court to determine and the burden rested on the appellant to establish it. We find no evidence bearing on the subject further than that she was an aged woman physically infirm and that what little business she had was transacted through him, whether under her direction or upon his advice does not appear.

It is generally recognized that a deed from a parent to a child, alone and of itself, raises no presumption of undue influence. See Anno., 1915D Ann. Cas. 711, 1918B Ann. Cas. 452. This is true even though there is a combination of age, improvidence and lack of consideration present in the transaction. *Deckard* v. *Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997; *Aldrich* v. *Amiss* (1912), 178 Ind. 303, 99 N. E. 419. After a complete review of the

record we are unable to say that a confidential relationship between William Hutchens and his mother, in which he was a dominant party, appears as a matter of law.

Judgment affirmed.

Martin, P. J., dissents.

NOTE.—Reported in 91 N. E. 2d 182.